■ HOME INSURANCE COMPANY OF INDIANA, Respondent, v PAUL KARANTONIS et al., Appellants, et al., Defendants.—Mikoll, J. Appeal from an order and judgment of the Supreme Court (Dier, J.), entered September 15, 1988 in Warren County, (1) upon a verdict rendered in favor of plaintiff, and (2) which denied various defendants' motions to set aside the verdict and for a new trial.

Defendants Paul Karantonis, John Karantonis and Steven Karantonis (hereinafter collectively referred to as defendants) purchased, for investment purposes, real property located in the Town of Lake George, Warren County, in November 1980 for $71,000, which included a $25,000 mortgage held by defendants George Head, Linda Head and Madeline White.* The property, a motel known as Cobblestone Cottages, consisted of two main buildings, six cottages, a garage and a storage room. Defendants insured the premises with plaintiff in 1981 for $50,000 on each of the two main buildings and $20,000 on each of the six cottages. Defendants worked full time elsewhere and, therefore, hired Beverly Battle to manage the property. Defendants, as partners, had a tax loss of $1,842 in 1981. In July 1982, the Department of Health inspected the motel and determined that the property was unsatisfactory and the water unacceptable. A new well, dug in late 1982, was not hooked up to the buildings because the ground was frozen. In August 1982, defendants increased the insurance coverage on the two main buildings to $60,000 each, but the coverage on each of the six cottages was reduced to $15,000. The loss to the partnership in 1982 was $5,499.

The motel did not open in 1983 because Paul Karantonis, who was to do necessary repair work, did not do it because he crushed his arm in a construction accident in April 1983. Consequently, the partnership suffered a loss of $9,230 for that year. Also, a foreclosure action was instituted by the three mortgagees against defendants in June 1983.

Renovations totaling $23,528 were to be done on the property in 1984. In late February 1984, a contract for the renovations was signed, a deposit of $7,000 for the work was paid and the work was begun. Thereafter, defendants obtained a builder's risk policy to cover the property during the renovations, increasing the coverage on the two main buildings to $80,000 each.

On June 13, 1984, at approximately 2:45 P.M., a fire broke

---

* Plaintiff's action against the three mortgagees was withdrawn during trial.

out in the two main buildings of defendants' property. The renovations, except for installation of a carpet, a dishwasher and completion of a drainable ditch, were completed at this time. On August 23, 1984, defendants presented a sworn statement of loss to plaintiff, based on estimates from fire adjusters, in the amount of $155,810.05 for damages due to the fire. Plaintiff rejected the claim and instituted this action. Subsequent to the fire, defendants sold the property for $42,000. Plaintiff contends that if defendants were paid the claim, they would be unjustly enriched by about $105,000, derived from the $155,000 fire insurance proceeds plus $42,000 from the sale after the fire, less the $71,000 original sales price and $21,000 in improvements to the property.

After trial, the jury determined that defendants were guilty of violating the insurance policy by concealing, misrepresenting or falsely swearing under the proof of loss and increasing the hazard of loss by fire by means within their control, thereby allowing plaintiff to refuse to pay the claim. The jury therefore rendered judgment in favor of plaintiff. Motions by defendants to set aside the verdict and for a new trial were denied by Supreme Court. This appeal followed.

We reject defendants' contention that plaintiff failed to meet its burden of proof that the fire was intentionally set and that defendants willfully concealed or misrepresented any material fact relating to their loss. The jury's verdict was supported by clear and convincing evidence that defendants had motive to cause the fire, had made material misrepresentations and willful concealments, and had increased the hazard of loss by fire. The clear and convincing evidence standard is satisfied when the party bearing the burden of proof has established that it is highly probable that what he or she has claimed is actually what happened (*Ausch v St. Paul Fire & Mar. Ins. Co.,* 125 AD2d 43, 45, *lv denied* 70 NY2d 610; *see also,* PJI 1:64 [1989 Supp]). Arson in civil cases can be established by circumstantial evidence (*see, Weed v American Home Assur. Co.,* 91 AD2d 750, 751) and the Court of Appeals has recognized that evidence of an insured's desperate financial condition is a motive for arson (*R.C.S. Farmers Mkts. Corp. v Great Am. Ins. Co.,* 56 NY2d 918, 920).

Plaintiff offered sufficient circumstantial evidence to sustain a finding that defendants had a motive to set or procure the fire loss. Defendants' contention that the renovation work they had contracted for and completed prior to the fire is evidence that they had no motive to set or procure the fire could be rejected, because defendants had also increased the

insurance coverage of the two buildings by $40,000 and corrective action for the sewage and water problems would be added expense. Further, proof of defendants' desperate financial condition, a history of problems with the Department of Health and the fact that the project had been a losing proposition from its inception all militate against defendants' claims of lack of motive *(see, Lott v Aetna Life & Cas. Co.,* 140 AD2d 859, 861).

Additionally, the evidence was clear and convincing that defendants had made material misrepresentations and willful concealments and had increased the hazard of loss by fire. The proof demonstrated that the two fires were separate and distinct. A gasoline can was found in the debris of each building. There was expert proof that the cans contained gasoline and that gasoline had been used in the incendiary process. The jury could properly find on the facts and circumstances presented that defendants made a fraudulent claim and made false material statements in their fire insurance claim.

We also find that Supreme Court correctly refused defendants' request to charge the jury concerning the innocent coinsured doctrine. Defendants' reliance on *Reed v Federal Ins. Co.* (71 NY2d 581) is misplaced. The innocent coinsured doctrine is not applicable in this case because the jury found that each individual defendant had himself violated the policy provisions by concealing, misrepresenting, falsely swearing under proof of loss and/or had increased the hazard of loss by fire *(see, supra,* at 587-588). Moreover, the wording of defendants' requested charge was ambiguous and confusing.

Order and judgment affirmed, with costs. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Levine, JJ., concur.