■ CHENANGO MUTUAL INSURANCE COMPANY, Appellant, v EDLYNE CHARLES et al., Respondents. (And Another Related Action.) [652 NYS2d 134] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Connor, J.), entered November 8, 1995 in Greene County, upon a dismissal of the complaint at the close of plaintiff's case.

In 1989, defendants purchased a parcel of real property in the Town of Catskill, Greene County, for business and investment purposes. There were three buildings on the property: a large main building with group living and dining facilities, a commercial kitchen and separate rooms with private baths; a smaller, unheated "motel" building; and a storage shed. In January 1991, after completing some renovations and receiving a certificate from the Bureau of Veterans Affairs, defendants began renting rooms to "ambulatory" veterans.

By June 1991, however, the property was again vacant (with the exception of a caretaker, with whom defendants were dissatisfied and who had been asked to leave), and defendants had begun making further renovations, converting some of the rooms into apartments, in anticipation of entering into a one-year lease with a church beginning in August 1991. Defendant Edlyne Charles (hereinafter Charles), who was actively involved in the management of the property, testified, without contradiction, that the church had agreed to pay rent for the entire property in the amount of $10,000 per month, for one year, beginning on August 1, 1991, and that she had undertaken to renovate the buildings to meet the prospective tenant's needs. In mid-July 1991, however, work had been stopped by the Town Building Inspector pending receipt of architectural plans.

In June 1991, defendants obtained fire insurance coverage

from plaintiff, with limits of $275,000 for the main building and $100,000 for the motel. Although defendants' insurance agent had inspected and photographed the property prior to seeking approval to issue the policy, plaintiff subsequently sent an independent inspector to evaluate the premises. After receiving the latter's report, plaintiff sent defendants a notice, dated July 29, 1991, canceling their policy effective August 28, 1991; the reason given was that the property was not being properly maintained. Charles testified that she had not yet received this notice when, on August 1, 1991, the motel building was damaged by an intentionally set fire. At the time of the fire, defendants were in Town of Wappingers Falls, Dutchess County, over an hour's drive from the property, and the caretaker was in jail.

Defendants sought recovery for the fire loss, to the extent of the policy limits of $100,000 for damage to the motel building, $5,000 for rubbish removal and $10,000 for loss of use, and also for a separate loss caused by vandalism to the main building that had occurred two weeks before the fire. Plaintiff denied coverage for both losses and commenced an action (hereinafter action No. 1) seeking a declaratory judgment that the insurance policy was void due to defendants' false and fraudulent statements concerning the cause of the fire and the amount of loss sustained. Defendants thereafter commenced a separate action against plaintiff (hereinafter action No. 2) seeking, *inter alia*, to recover for the damages allegedly suffered as a result of the vandalism and fire. Plaintiff's motion to join the two actions for trial was granted, but on the day of trial Supreme Court, reasoning that the declaratory judgment action presented an equitable question which, if it were to be decided against defendants, would obviate the need for a jury trial on the issue of damages, severed the actions and ordered action No. 1 to proceed first before the court with an advisory jury. At the close of plaintiff's case, the court granted defendants' motion for a directed verdict, prompting this appeal.

To prevail on its claim that defendants intentionally caused or procured the setting of the fire, plaintiff was required to demonstrate, by clear and convincing evidence, that defendants committed the acts in question (*see, Ausch v St. Paul Fire & Mar. Ins. Co.*, 125 AD2d 43, 45, *lv denied* 70 NY2d 610; *Hutt v Lumbermens Mut. Cas. Co.*, 95 AD2d 255, 256-257). This criterion is met only when the proof establishes a high probability that the fraudulent acts occurred (*see, Home Ins. Co. v Karantonis*, 156 AD2d 844, 845). Inasmuch as the incendiary nature of the fire was not disputed, plaintiff's case centered around

proof that defendants had a financial motive to destroy their property for the insurance proceeds. While an insured party's "desperate financial condition" can be indicative of a motive to commit arson (*see, id.,* at 845), the evidence proffered by plaintiff, even including those items it contends were improperly excluded from consideration by Supreme Court, would not warrant a finding that defendants' economic condition was in any way "desperate". Though they had a significant amount of debt, had suffered losses and expended large amounts of money to renovate the subject property, it was uncontroverted that, at the time of the fire, defendants had an expectation of renting the premises for a substantial sum, and of closing the sale of another property—from which they apparently netted some $200,000—in the near future.

Moreover, defendants' income tax returns indicate that they not only had more net income in 1991 than in the previous years, but had made charitable contributions of nearly $1,000 that year. There was no evidence that defendants were failing, to any significant degree, to meet their obligations; that foreclosure proceedings had been commenced, or even threatened, with respect to any of defendants' investment properties (*compare, Home Ins. Co. v Karantonis, supra,* at 844; *Lott v Aetna Life & Cas. Co.,* 140 AD2d 859, 860-861), several of which were turning a profit; that they had filed for or considered bankruptcy; or that they were otherwise in dire financial straits (*compare, Ashline v Genesee Patrons Coop. Ins. Co.,* 224 AD2d 847, 849). Furthermore, while Supreme Court may have erred in excluding some evidence bearing on defendants' general financial condition and prior insurance transactions, much of the evidence that plaintiff contends was improperly excluded was simply duplicative of information that was elicited by other means, and the remainder—even if it did show that defendants had some additional debt, or that the subject property had deteriorated or been damaged— would not, in our view, have been enough to warrant a finding that defendants were in such serious financial trouble as to motivate committing arson.

Given the thinness of plaintiff's proof on the issue of motive, along with its failure to produce any evidence at all showing that either of the defendants, or anyone who might have been acting on their behalf or at their direction, had an opportunity to set the fire, or was seen on or near the premises on the day it occurred (*compare, Ashline v Genesee Patrons Coop. Ins. Co., supra,* at 218; *3910 Super K v Pennsylvania Lumbermens Mut. Ins. Co.,* 219 AD2d 589; *Torian v Reliance Ins. Co.,* 171 AD2d

971; *Weed v American Home Assur. Co.*, 91 AD2d 750, 751), it cannot be said that plaintiff has produced "clear and convincing" evidence demonstrating, to a high degree of probability, that defendants caused or procured the fire. In sum, Supreme Court properly directed a verdict for defendants on this issue.

As for the charges of false swearing and exaggeration of losses, however, plaintiff was so hampered in its attempts to tender relevant and probative evidence with respect thereto that a new trial is warranted. Notably, although Supreme Court did allow some testimony regarding the basis for and reasonableness of defendants' $10,000 loss of use claim, it also explicitly stated that it would not "get into" the issue of willful exaggeration, and limited plaintiff's proof in this regard. Beyond that, the proof plaintiff was allowed to introduce, when viewed in the most favorable light, could justify a finding that defendants knowingly misrepresented the condition of the property prior to the fire or the damage they incurred as a result of the loss of use of the motel. Because the factual issues surrounding these defenses are inseparably linked with the question of defendants' actual losses—indeed, it cannot be determined whether the claims were exaggerated at all, let alone intentionally, until the actual amount of damage is ascertained—it is our view that no benefit is gained by trying them separately from defendants' claims in action No. 2 (*see, Guilford v Netter*, 179 AD2d 801, 802; *cf.*, *Mignott v Sears, Roebuck & Co.*, 101 AD2d 731, 732).

Rather, severance of these issues leaves open the prospect of inconsistent fact findings and engenders the possibility that much of the same proof will need to be presented twice, first on the issue of exaggeration and again in the trial of damages. Consequently, the issues of material misrepresentation, false swearing and willful exaggeration of claims, insofar as they relate to matters other than the cause of the fire—and any assertion that defendants procured it—should be considered by the jury to be empaneled for action No. 2. Nevertheless, inasmuch as these affirmative defenses are equitable in nature, seeking essentially rescission of the contract for fraud, the jury's verdict with respect thereto should be considered advisory only (*see, Mercantile & Gen. Reins. Co. v Colonial Assur. Co.*, 82 NY2d 248, 252-253).

Mikoll, J. P., Peters and Spain, JJ., concur. Ordered that the judgment is modified, on the law, to the extent that the complaint in action No. 1 is reinstated insofar as it is premised upon charges of false swearing, misrepresentation and willful exaggeration of claims; matter remitted to the Supreme Court

for a new trial with action No. 2; and, as so modified, affirmed, with costs to abide the event.